UNITED STATES DISTRICT
COURT DISTRICT OF
COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v.   : | **Criminal Case No. 23 CR 287 (RCL)** |
| : | |
| **DAVID ZANDERS,** : | |
| : | |
| **Defendant.** : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, and per the plea agreement, the United States requests that the Court sentence the defendant to a period of 15 years of incarceration on both counts of Kidnapping, in violation of 18 U.S.C. 1201(a) and Carjacking, in violation of 18 U.S.C. 2119(1), and that the sentences run concurrently; the government further requests that the Court impose a period of 5 years of supervised release. The government agrees with the presentence report that the defendant's sentencing guidelines are between 151 and 188 months.[1] In support of this sentence, the government states the following:

**I.   Factual Summary**

In the early morning hours on May 1, 2022, between 1:00 a.m. and 1:30 a.m., defendant David Zanders picked up defendant Kendall Hatton-Juggins in his 2020 gray Dodge Charger to go to a lounge on U Street, Northwest, Washington, D.C. Defendant Zanders was driving with a gun and there was a second firearm in the car as well. The two defendants were smoking and drinking in the

---

[1] At the time of the plea, based on the available information about the defendant's criminal convictions, the government calculated the defendant's sentencing guidelines as between 121 to 151 months, but made clear that the government would be asking for 15 years of incarceration at sentencing.

1

car until Zanders saw two males outside the Flash nightclub located at 645 Florida Avenue, Northwest, Washington, D.C. Zanders stopped the car, pretended to be an Uber, and the two male victims, victim 1 (V-1) and victim 2 (V-2), believing the Charger was their Uber, got into the vehicle. Zanders then started driving the vehicle after both victims were in the rear passenger seats. Once both victims realized that they were in the wrong car, they asked to be let out of the vehicle, but Zanders subsequently locked the doors.

Shortly thereafter, Zanders pulled over on a neighborhood street in Washington, D.C. The two defendants pointed their guns at the victims and told them to give him their phones and money. The victims complied and handed over their phones and money. The two defendants then drove the victims to a Valero gas station located at 5420 New Hampshire Avenue, Northwest, in an attempt to withdraw money from the ATM using the victims'' credit cards. After Zanders stopped the car, V-1 got out of the car and fled. V-2 remained in the car and did not attempt to flee.

The defendants then drove to the Giant Supermarket at 5815 Eastern Avenue, Hyattsville, Maryland with V-2. At the Giant, both defendants exited the vehicle and using V-2's ATM card were able to withdraw approximately $1,000. Shortly thereafter, they released V-2 in Maryland. Zanders then dropped off Hatton-Juggins at his house in Washington, D.C.

Several hours later, in the morning, on May 1, 2022, Zanders called Hatton-Juggins and said that he was going to sell a white Infiniti that he had previously stolen. They drove to a grocery store in Silver Spring, Maryland to meet a potential buyer of the Infiniti. The potential buyer saw the Infiniti but did not agree to purchase the vehicle at that time.

Later that evening the buyer agreed to purchase the vehicle at an Autozone located at 955 Longfellow Street, Northwest. At approximately 11:00 p.m., Zanders, Hatton-Juggins and a third suspect arrived at the parking lot at the Autozone. They arrived in two vehicles, the Infiniti

that they were purporting to sell and the original gray Dodge Charger that was used in the kidnapping earlier in the day. Hatton-Juggins and the third suspect were both wearing masks, armed with firearms while sitting in the Infiniti. Victim 3 (V-3) and Victim 4 (V-4) arrived in V-3's 2019 green Dodge Charger (hereinafter the "Victim's Vehicle"). Zanders exited his 2020 gray Dodge Charger and spoke with V-3. Zanders then pulled out his gun and threatened to shoot V-3 and asked for his money, phone and keys. V-3 complied and gave his phone, money and keys. At the same time, Hatton-Juggins and the third suspect took out their guns as well. The third suspect demanded the car keys from V-4 and V-4 tossed the car keys of the Victim's Vehicle to the third suspect. The third suspect then drove away with the Victim's Vehicle. Hatton-Juggins drove away in the white Infiniti and Zanders drove away in the 2020 grey Dodge charger. The carjacked vehicle was swabbed and Zanders DNA was found on the steering wheel of the carjacked vehicle.

## II.  Procedural History

On May 1, 2022 the defendant was charged by indictment on one count of Kidnapping in violation of Title 18, United States Code, Section 1201(a)(1). On July 18, 2024 the defendant was charged by a superseding indictment on one count of Kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1), one count of Carjacking, in violation of Title 18, United States Code, Section 2119 and one count of Using Carrying, Possessing, and Brandishing a Firearm during a Crime of Violence in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii)). On November 1, 2024, the defendant pled guilty to Kidnapping, in violation of 18 U.S.C. 1201(a)(1) and Count 2, Carjacking in violation of 18 U.S.C. 2119(1).

## III.  Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the

applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *United States v. Rita*, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

1. Statutory Penalties and the U.S. Sentencing Guidelines

The offense of Kidnapping, in violation of 18 U.S.C. 1201(a)(1) carries with it a sentence of life imprisonment, a fine of $250,000 and a term of supervised release of not more than 5 years. The offense of Carjacking, in violation of 18 U.S.C. 2119(1) carries with it a sentence of 15 years, a fine of $250,000, and a term of supervised release not more than 5 years.

A. Offense Level Calculation

The government agrees that the base level offense is **35** pursuant to U.S.S.G. §3D.1.1(a)(3).

A. Criminal History Category

The Defendant has the following juvenile dispositions and is therefore in Criminal History Category III and has 4 points:

| | | | |
|---|---|---|---|
| 2016 DEL 1099 | Simple Assault; Theft Second Degree | 4A1.2(d)(2)(B) 4A1.1(c) | 1 |
| 2017 DEL 0718 | Theft Second Degree | 4A1.2(d)(2)(B) 4A1.1(c) | 1 |
| Fairfax, Virginia | Assault & Battery | 4A1.2(2)(B) | 1 |

4

| | | | |
|---|---|---|---|
| Fairfax, Virginia | Forge License Plates | 4A1.2(d)(2)(B) 4A1.1(c) | 1 |
| 2019 DEL 1118 | Assault With a Dangerous Weapon | 4A1.2(d)(2)B 4A1.1(c) | 0 |
| 2020 DEL 213 | Robbery | 4A1.2(d)(2)B 4A1.1(c) | 0 |

The Defendant has demonstrated acceptance of responsibility for the offense and the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a) and an additional level under U.S.S.G. § 3E1.1(b). Therefore, the defendant's total offense level is **32**. The government agrees that the defendant's guideline range is **151** months to **188** months.

B. Argument

The defendant should be sentenced to the higher end of the guidelines, which in this case is 15 years of incarceration. As an adult, defendant Zander repeatedly stole vehicles, sold them to make money and kidnapped unsuspecting victims while using a firearm. On July 1, 2022, the day of Zander's arrest, in a search of a storage locker on July 1, 2022 that the defendant used and shared with his girlfriend in the instant case revealed a Mossberg 500 12 gauge shotgun, five firearm magazines and accessories, miscellaneous ammunition, 13 identification cards not in his name, and 17 bank cards not in his name. **(Figure 1 -6).**



**Figure 1**



**Figure 2**



**Figure 3**



**Figure 4**




**Figure 5**             **Figure 6**

In the instant case, the defendant kidnapped and carjacked a total of four victims in a span of less than 24 hours. Simply put, it was a night of terror for all four of the victims. Around 1 a.m., on May 1, 2022, defendant Zanders was looking to kidnap and rob someone when he came across the first two victims. The victims, already inebriated and exiting from a night club, mistakenly entered the defendant's vehicle thinking that it was their Uber. They were then robbed, scared and driven around, not knowing where they were going. One of the victims was able to escape at a gas station **(Figure 7),** but the second victim remained in the car and begged the defendants not to kill him. That second victim was then driven to a Giant in Maryland where both defendants took the victim's debit card, used it at the Giant ATM and stole approximately $1,000 money from his bank account. The second victim was then released in Maryland near a 711.



**Figure 7**

The two kidnapping victims were understandable terrorized as the emotional toll from the incident was significant. V-1 in **Figure 7** had the wherewithal to escape and stated that what "started as a routine decision to use a rideshare service quickly became a terrifying experience." And that he struggles with "…fear and anxiety" as "[s]imple activities that once felt safe, like using rideshare services or walking alone" fill him with dread. V-2 remained in the car in **Figure 7,** was paralyzed with fear and remained in the back seat of the car and did not escape. In fact V-2 was so scared, that when both defendants went to the ATM at the Giant, they left V-2 alone in the car.

After the kidnapping, and still in the morning hours of May 1, 2022, defendant Zanders along with defendant Hatton-Juggins met two additional victims under the pretense of selling a white Infinity. Zanders later arranged for the two victims to meet him that evening at an Autozone with the plan to carjack the victims and steal V-3's green Dodge Charger. Zanders then recruited a third suspect to help him carjack the victims and executed his plan. When the victims arrived at

the Autozone with the money to buy the white Inifinti, they were robbed at gun point while the third suspect drove away with V-3's green Dodge Charger.

The carjacking victims were just as traumatized from the incident as the kidnapping victims. V-3 initially tried to resist Zanders by refusing to give over the car keys, but Zanders threatened to kill him. Zanders then asked for V-3's phones password, when V-3 again hesitated Zanders pulled the slide on the firearm back to ensure that there was a bullet in the chamber. Again, he threatened to kill V-3 if he did not give over the password. After V-3 gave the password Zanders ordered both victims to run away. The two victims ran to an apartment complex across the street from the autozone. The two of them hugged each other, cried and called 911 for help.

Zander's actions are not out of the ordinary for him but illustrate a gradual escalation in his criminal activity as evident in his juvenile criminal history. Those early years showed defendant Zanders already endangering and committing physical violence against people. Between the ages of 13 and 17 he had been charged with 10 cases, all were dismissed or no petitioned. The lead count on four of those dismissed matters was robbery and he was expelled from Cardozo High School. *See* Draft PSR at 25. As a juvenile, in May 2019, the defendant was found responsible for Assault and Battery. *See* Draft PSR at 11. In November 2019, the defendant was found responsible for Assault with a Dangerous Weapon when he stole a phone. *See* Draft PSR at 12. In that case, defendant Zanders, along with two other suspects, cornered the victim in an alley and threatened the victim with a knife. Specifically, Zanders swung the blade in a such a menacing manner that he was suggesting that he would stab the victim. In April 2020, the defendant was found responsible for Robbery where he was also charged with Credit Card Fraud and Receiving Stolen Property. *See* Draft PSR at 12. In that matter Zanders stole a victim's purse and cell phone. *Id.*

Defendant Zanders is alleged to have committed another armed kidnapping on July 1, 2022, two months after the instant offense in Prince George's County in CT221101A. *See* Draft PSR at 21. In that case, the victim was a locksmith and was asked by defendant Zanders and another suspect to program a key for a stolen red Dodge Charger. The victim reprogramed the key but then defendant Zanders and the other suspect took out their firearms, pointed them at the victim, demanded $5,000 and threatened to kill him. *Id.* When the victim told them that he did not have the money, he was told to obtain the money from family and friends. The victim then called his wife and asked her to send $3,000 through Apple Pay. She complied, but suspecting that her husband was in danger, called 911 for help and shared the victim's phone location with the police. *Id.*

Similar to the instant case, defendant Zanders and the other suspect forced the victim into a stolen red Dodge Charger and drove him around and forced him to withdraw money from ATMs, in this case, approximately $1060 from two bank accounts. *Id.* Meanwhile, Prince George's County police were able to track the victim's phone and attempted to do a traffic stop. Defendant Zander's refused to stop and a brief vehicle pursuit occurred as defendant Zanders tried to escape by driving through a field and eventually bailing out of the car. Defendant Zanders also has a second case in Prince George's County, where he is charged in a 39 count Indictment, in CT221267A, where he and his co-defendants have been charged with stealing approximately 29 vehicles that have a total value of $1,136,582.

The defendant is dangerous, he steals cars, threatens victims and almost always uses a firearm. The crimes involve some level of planning and Zanders recruiting additional suspects. We know this not only from the defendant Zanders' actions in this case, or his criminal activity in Prince George's County, but from his Instagram account where he posted photographs of himself

with firearms. **(Figure 8A & 8B).**

 

      Figure 8A                             Figure 8B

In the instant case the defendant used a firearm in a kidnapping and carjacking. All four of the victims were in fear of their lives. In 2025 alone there have been 43 carjacking offenses in Washington, D.C. and 77% of those carjackings involved firearms. *MPD Carjacking Dashboard*: https://mpdc.dc.gov/page/carjacking (last visited February 27, 2025). The kidnapping is especially frightening as the victims were helpless and powerless for an extended period of time, being driven around in darkness not knowing what is going to happen next. The crimes were brazen and bold, where Zanders actions were incredibly dangerous where he had little regard for the consequences. The defendant's crimes are not isolated from the community he lives in, rather they directly affect the community and the people who live in it. In Washington D.C., the rate of violent crimes committed with guns in the community continues to rise: between February 23, 2022 and

February 23, 2025, violent crimes committed with a gun went up by 1,414 citywide compared to the previous three years *Crime Cards*, Metropolis Police Department:

https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat

(last visited February 23, 2025).

### IV. Conclusion

For the foregoing reasons, the government recommends that the Court sentence the defendant to a sentence of 15 years of incarceration on both counts to run concurrent and it be followed by 5 years of supervised release. The government submits that a sentence of 15 years of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of 15 years serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,
EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY

BY: /s/
SHEHZAD AKHTAR
D.C. Bar No. 493635
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7498
E-mail: Shehzad.Akhtar@usdoj.gov